NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL Y., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.Y., *Appellees.*

No. 1 CA-JV 16-0153
FILED 11-15-2016

Appeal from the Superior Court in Maricopa County
No. JD29028
The Honorable Bruce R. Cohen, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Randall M. Howe joined.

---

**K E S S L E R**, Judge:

¶1        Appellant Michael Y. ("Father") appeals the juvenile court's termination of his parental rights. Father argues the court erred in finding that the Department of Child Services ("DCS") had proved by clear and convincing evidence that his sentence was long enough to deprive the child, C.Y., of a normal home and had showed severance was in C.Y.'s best interests. For the following reasons, we affirm the juvenile court's ruling.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Father and S.O. ("Mother") are the biological parents of C.Y., born in March 2014.[1] C.Y. was born prematurely and tested positive for methamphetamine. Mother admitted to using methamphetamine during her pregnancy. C.Y. has several medical conditions, including cerebral palsy and aspiration. C.Y. has paralyzed vocal cords and needs a feeding tube. He also needs near-constant oxygen.

¶3        Father is currently incarcerated at Arizona State Prison Complex Lewis and is serving a four-and-a-half-year sentence for forgery. Father is eligible for early release in October 2017 and could be incarcerated until September 2018. Father asserted his maximum sentence ends in February 2018, however.

¶4        Father has never met C.Y.; he was born after Father was imprisoned. M.B., the DCS caseworker, stated the relationship between Father and C.Y. cannot be nurtured while Father is incarcerated. C.Y. cannot visit Father because of his medical needs and cannot have phone conversations because he is nonverbal. Father has sent C.Y. gifts from prison and has inquired as to C.Y.'s wellbeing.

¶5        M.B. testified it would be at least a year after Father's release before Father would complete the services needed to reunite him with C.Y.

---

[1]        Mother's rights were also terminated in the same proceeding, but she did not appeal the juvenile court's ruling.

and additional time would be required beyond that to train Father regarding C.Y.'s medical needs. M.B. estimated it could be several years before C.Y. could be reunited with Father and expressed concern about the effect this would have on C.Y.'s stability and permanency.

**¶6** C.Y.'s current placement is able to meet his medical needs and is willing to adopt. C.Y. is attached and secure. Even if the current placement was unable to adopt, M.B. testified that C.Y. is otherwise adoptable.

**¶7** DCS asserted Father is unable to parent due to the length of his conviction and C.Y. would therefore be deprived of a normal home life for a period of years. Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(4) (2016).[2] Additionally, DCS argued it is in C.Y.'s best interest to sever Father's rights so C.Y.'s current placement can adopt him. The juvenile court agreed and severed Father's parental rights on those grounds.

**¶8** Father timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A) (2016) and 12-120.21(A)(1) (2016).

## DISCUSSION

I. Standard of Review

**¶9** To terminate parental rights, the juvenile court must find, by clear and convincing evidence, at least one of the statutory grounds set out in A.R.S. § 8-533(B). *See* A.R.S. § 8-533(B); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). It must also find DCS has shown by a preponderance of the evidence that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We will review the juvenile court's termination order in the light most favorable to sustaining the court's decision and will affirm unless, as a matter of law, we must say that no one could reasonably find the evidence supporting statutory grounds for termination to be clear and convincing. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10 (App. 2009) (citations and quotations omitted). We will affirm the juvenile court's severance order absent an abuse of discretion or unless the court's findings of fact were clearly erroneous. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58, ¶ 9 (App. 2015) (citations and quotations omitted).

---

[2] We cite the current version of the relevant statute unless changes material to this decision have occurred since the events in question.

II.     Length of Incarceration for Felony Conviction

**¶10**        A.R.S. § 8-533(B)(4) provides no bright line definition whether a sentence of incarceration is sufficiently long to deprive a child of a normal home for a period of years. *Michael J.*, 196 Ariz. at 251, ¶ 29. In making this determination, the juvenile court should consider all relevant factors, including, but not limited to

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* at 251-52. We will affirm the juvenile court's ruling if the facts support the ruling "whether or not each supportive fact is specifically called out by the trial court in its findings." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451-52, ¶ 19 (App. 2007) (citation omitted). The juvenile court will be deemed to have made every finding necessary to support the judgment. *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 14 (App. 2014) (citation and quotations omitted).

**¶11**        Here, the juvenile court made express and substantial findings regarding the relevant *Michael J.* factors. The court found that Father had no parental relationship with C.Y. when his incarceration began and that C.Y. will be at least three-and-a-half years old at Father's earliest release date. The court further found "[t]here are virtually no means by which [C.Y.] could have regular contact with Father at the prison." Additionally, because of C.Y.'s young age and substantial medical needs, the court held "even a relatively shorter period of incarceration would still have a profound negative impact" and would deprive C.Y. of a normal home.

**¶12**        The juvenile court correctly observed the length of Father's sentence is not dispositive and considered instead "the entire period of the parent's incarceration and absence from the home." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281, ¶ 8 (App. 2002) (citation omitted). Father was incarcerated a few days before C.Y. was born and will not be released until October 2017 at the earliest. Although the record shows some dispute

whether the latest release date was in February or September 2018, the juvenile court considered only the February date. Because of the lack of relationship between Father and C.Y. and C.Y.'s medical needs, the court found conceivable that C.Y. would be nearing his fifth birthday before he could be reunited with Father.

**¶13**     We recognize that Father has made efforts to start a relationship with C.Y. and is interested in caring for him when Father is released from prison. However, we must view the record in the light most favorable to protecting the child. *See Michael J.*, 196 Ariz. at 251-52, ¶ 29 (listing factors that focus on the child's needs during the parent's incarceration). Based on these grounds, the juvenile court found DCS met its burden of proof to terminate Father's rights under A.R.S. § 8-533(B)(4). As the juvenile court's decision is supported by substantial evidence, we affirm.

III.     Best Interests of the Child

**¶14**     In addition to finding statutory grounds for termination, the juvenile court must also find terminating parental rights is in the best interests of the child. A.R.S. § 8-533(B). To establish that severance of a parent's rights would be in a child's best interests, "the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998) (citation omitted). In making this determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting the needs of the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) (citations omitted).

**¶15**     The juvenile court found that C.Y.'s current placement has met all of his severe medical needs and has also provided him with "love, nurturing, stability, permanency, and safety." Although the current placement is willing to adopt C.Y., M.B. testified and the court found that he is adoptable even if this adoption is unable to proceed.

**¶16**     Based on the foregoing, the juvenile court found it would be in C.Y.'s best interests to terminate Father's parental rights. The record supports that finding.

## CONCLUSION

¶17      For the foregoing reasons, we affirm the termination of Father's parental rights as to C.Y.



AMY M. WOOD • Clerk of the Court
FILED: AA